MARITZA COLÓN, as mother with patria potestas and in representation of her minor children BELENCITA, MARITZA, and ANTONIO AYUSO COLÓN, Petitioners, v. SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, PLINIO PÉREZ MARRERO, JUDGE, Respondent, v. SUPERIOR COURT OF PUERTO RICO, CAGUAS PART, J. VILLARES RODRÍGUEZ, JUDGE, Respondent; MR. ANTONIO AYUSO VALDIVIESO and his wife IRIS MIERES, Interveners.

Nos. O-68-306, O-68-307.        Decided March 27, 1969.

*Francisco Ponsa Feliú, Álvaro R. Calderón, Jr., Rieckehoff, Calderón, Vargas & Arroyo* for petitioners. *Benjamín Ortiz, Adolfo Mieres Calimano,* and *Arnaldo Sánchez Recio* for interveners.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

At the request of Maritza Colón, mother with patria potestas, in representation of her minor children Belencita, Maritza, and Antonio Ayuso Colón, we issued writ of certiorari No. 0-68-306 to review a judgment of the Superior Court, San Juan Part, Plinio Pérez Marrero, Judge, by which the court refused to continue with the proceedings in Civil Case R.F. 68-1922 of said Part, on the Declaration of Incapacity and the Appointment of Tutor.

At the request of the same petitioners we issued the present writ of certiorari, No. 0-68-307, to review the judgment of the Superior Court, Caguas Part, José A. Villares Rodríguez, Judge, by virtue of which it decreed the incapacity of Mr. Antonio Ayuso Valdivieso to govern himself and to administer his property, and appointed his wife, Iris Mieres Ayuso, tutrix of the incapacitated person. In view of the questions raised in these appeals a recital of the proceedings in the Superior Court is necessary.

On July 15, 1968, Maritza Colón, mother with patria potestas in representation of her minor children Belencita, Maritza, and Antonio Ayuso Colón, filed a petition in the Superior Court, San Juan Part, Case R.F. 68-1922, requesting the declaration of incapacity of Mr. Antonio Ayuso Valdivieso, and the appointment of his sister of full blood, Juanita Ayuso Valdivieso as his tutrix. In addition to the allegations concerning Mr. Ayuso's state of health, it was alleged that the minor-petitioners are his grandchildren, the children of his deceased son, Antonio Ayuso Molinari; that Mr. Ayuso is married to Iris Mieres, their son Antonio Ayuso Mieres being the only offspring of said marriage; that Mr. Antonio

Ayuso Valdivieso is the owner of considerable property and enterprises which are largely separate property, although also partly conjugal property acquired during his marriage to Iris Mieres. The fifth allegation of the petition reads as follows:

"Petitioners likewise allege that the present wife of Antonio Ayuso Valdivieso, Iris Mieres Ayuso, has opposing interests in conflict with the aforementioned Antonio Ayuso Valdivieso and with petitioners in their capacity as forced heirs of Antonio Ayuso Valdivieso; petitioners likewise allege that their rights as such forced heirs are in conflict with those of the only other forced heir of the said Antonio Ayuso Valdivieso, his son the aforementioned Antonio Ayuso Mieres, who is a minor; and that Antonio Ayuso Valdivieso does not have any other children of legal age, father, mother, or grandparents, since all the latter are dead."

It was also alleged that Iris Mieres, having knowledge of the state of physical and mental incapacity of her husband and being authorized by law to file the petition of incapacity, had not taken any action whatsoever in that sense and she herself had undertaken the administration of the property; and that there existed the opposing and conflicting interests alleged in the fifth paragraph copied above, the appointment of the wife, Mrs. Mieres, as Mr. Ayuso's tutrix was not proper, and it was proper to appoint Juanita Ayuso Valdivieso, his sister, in such capacity.

On July 18, 1968, the foregoing petition for declaration of incapacity and appointment of tutor was notified to Mr. Antonio Ayuso Valdivieso, to his wife Iris Mieres Ayuso, and to the prosecuting attorney of the Superior Court, San Juan Part.

On July 24 Mr. Antonio Ayuso and his wife Iris Mieres appeared represented by attorneys Mr. Luis R. Polo, Mr. Jorge Luis Córdova Díaz, and Mr. Adolfo Mieres Calimano, and filed a motion of opposition to the aforementioned petition. They accepted the existence of considerable property

but they alleged it was mainly conjugal property belonging to the present marriage; they rejected the fifth paragraph copied above except as to the reference to the nonexistence of other ascendants or descendants of Mr. Ayuso, and rejected the other allegations in relation to the conflict of interest between the minor-petitioners and the wife, Iris Mieres, in relation to the appointment of tutor.

The court set the hearing of the case for September 5, 1968. On August 5, 1968 the minor-petitioners appeared by motion requesting the court to order that Mr. Antonio Ayuso Valdivieso be submitted to a medico-psychiatric examination before a panel of three psychiatrists designated by the court. The hearing to argue the motion was set for August 30, 1968. From the minutes of said day (there is no stenographic transcript of said hearing) it appears that at the hearing already set for September 5, the expert psychiatrists brought by respondent would be heard, and in the event the insufficiency of the evidence were determined, another hearing would be set to hear other experts.

On September 6, 1968 the hearing was held with the appearance of the prosecuting attorney. The stenographic record of the same shows that the court heard the extensive testimony of psychiatrist Dr. Manuel Rodríguez Pérez, brought by respondents themselves. The physician's testimony tended to show that Ayuso was incapacitated to govern his person and administer his property, and his attorney, Mr. Córdova Díaz, stated that the evidence was sufficient to declare him incapacitated. When the minor-petitioners insisted that Mr. Ayuso be examined by other psychiatrists, the court ordered so, and Dr. Rafael Padró was designated for that purpose. The order was to the effect that the parties would communicate with Dr. Padró so that the latter perform the pertinent examinations and inform the court when they were ready for another hearing. On October 28, 1968, the court, on its own initiative, set the hearing of the

case for the next November 21. Up to here, the first stage of the proceedings in the San Juan Part.

On October 30, 1968 Iris Mieres Ayuso appeared in the Superior Court, Caguas Part, represented by Mr. Arnaldo Sánchez Recio, civil case CS-68-7576, requesting the Declaration of Incapacity and Appointment of Tutor. In addition to the allegations on the mental condition of her husband, Mr. Antonio Ayuso, the existence of properties specified in an inventory attached to the petition, and his incapacity to govern himself and to administer his property, petitioner alleged having married Antonio Ayuso on May 25, 1946 by which marriage they begot only one son, Antonio Avelino Ayuso Mieres, 19 years old; that due to the mental condition of Mr. Ayuso the appointment of a tutor was proper; that petitioner was not covered by any of the disqualifications for tutorship prescribed by law, and that she was the first in turn, entitled to assume the duties. She prayed for the declaration of incapacity of her husband and that she be appointed tutrix. On October 30, 1968 the petition was notified to Mr. Antonio Ayuso Valdivieso and the prosecuting attorney of the Superior Court, Caguas Part.

On said day, with the appearance of the prosecuting attorney, the Superior Court, Caguas Part, heard the parties. Petitioner offered the testimony of psychiatrists Dr. Manuel Rodríguez Pérez and Dr. Arturo Flores Gallardo on the mental condition of Mr. Ayuso. Antonio Ayuso himself testified in favor of the petition and in favor of the appointment of his wife, Iris Mieres, as his tutrix. (Tr. Ev. 30–36.)

On November 1, 1968 the Caguas Part entered an order declaring Antonio Ayuso Valdivieso incapable of governing himself and of administering his property. Consequently it appointed his wife Iris Mieres Ayuso tutrix, the latter having to give a bond of $50,000 to secure the good results of her management. On November 8 Mrs. Mieres accepted the tutorship. On the same date the judge admitted her bond.

On November 13 Maritza Colón, in representation of her minor children, appeared at the Superior Court, Caguas Part, and filed a (1) petition for intervention and (2) motion for reconsideration. In the former she alleged that, without hearing them, the court had passed judgment on two questions of great interest to them, which had been raised at the Superior Court, San Juan Part, and that the previous order of November 1 directly affected their interests, and they were not represented in the proceedings. In the motion for reconsideration they made a recital of the proceeding pending at the Superior Court, San Juan Part, and requested that the proceedings had at the Superior Court, Caguas Part, should be reconsidered, set aside and annulled (a) because this being a matter of a litigious nature already in the Superior Court, San Juan Part, the same could not be heard or adjudicated *ex parte* behind the back of the appearing parties; (b) because said matters in controversy were already under consideration in the Superior Court, San Juan Part, which was the competent Part, with the knowledge and consent of all the parties including petitioner Mrs. Mieres; (c) because, said proceedings being pending in the Superior Court, San Juan Part, the Caguas Part was not competent at law to exercise jurisdiction and authority on the matters to be decided, thus frustrating the functions of the San Juan Part and (d) because even if the Caguas Part were competent at law it should not sanction and approve the practice followed in this case.

On November 18 the Caguas Part entered an order denying the motion for reconsideration, on the ground that what was sought at the San Juan Part, the declaration of incapacity and the appointment of Ayuso's tutor, had already been decreed in Caguas. As to the petition for intervention, the latter was granted, the court stating that it had no objection to the minor's intervention and that they allege what was pertinent at law.

The same day, November 18, 1968 the minors appeared in the San Juan Part through petition entitled "Motion to Inform" notifying what occurred in Caguas. They attached copies of their motions for intervention, for reconsideration, and of the order of the Caguas Part in relation to the same.

On November 21 the hearing previously set was held in San Juan. Mrs. Mieres and her husband Antonio Ayuso were represented by their attorneys Mr. Luis R. Polo, Mr. Córdova Díaz, and Mr. Mieres Calimano. In view of the situation in the record, the court passed judgment in open court (Tr. Ev. 8 and 10) terminating its intervention in the matter. It entered other orders which shall not be considered in the present appeals.

Those are the facts.

The questions raised before us are the same raised in the respective Parts of the Superior Court, which have been previously stated.

In view of the fact that interveners Ayuso-Mieres raise before us as to appeal O-68-307, the question that we are not empowered to review, and said contention being a challenge to our authority and power as Court of Second Instance to entertain the matter and decide it, we must consider said contention before we continue on the merits.

To this respect interveners invoke the provisions of § 185 of the Civil Code (1930 ed.):

"Against the decree terminating the proceedings for incapacity, the interested parties may interpose a suit in the ordinary manner, by means of an oral and public trial."

Section 184 which precedes it provides that:

"The declaration of incapacity shall be made *summarily* and through an oral hearing before the district court."[1] (Italics ours.)

---

[1] To a certain point these §§ 185 and 184 are similar to others, Art. 128 of the Mortgage Law and Art. 175 of its Regulations, which refer to the *summary* foreclosure proceeding, in that generally, after being com-

In *Solá* v. *Solá*, 30 P.R.R. 705, decided in the year 1922, we confronted a contention similar to the one at bar, based on § 185. In said case the former District Court of Humacao decreed the incapacity of a certain person the cause being insanity. *Appeal was taken* before this Court from the judgment which decreed the incapacity. The dismissal of the appeal was requested and the Court granted it. The case was decided fundamentally under the principle that the appeal being of statutory nature the appeal in this case was not authorized by any of the provisions of § 295 of the Code of Civil Procedure then in force. We said that this section classified appeals into three groups: the first group includes *final* judgments in actions or proceedings begun in a district court; the second, judgments rendered by district courts on appeal; and the third, certain orders which are expressly described.[2]

We decided that the judgment decreeing the incapacity did not fall in the second nor in the third group contained in § 295. As to whether or not a final judgment was comprised in the first group, we said that the declaration of incapacity was not, since unless the decree is acquiesced in, the proceeding continues in the district court itself with the guaranties of an ordinary trial pursuant to the provisions of § 185.

Although the case of Solá was decided under a literal application of § 295, the same contains several citations from Manresa and Scàevola which help us to understand the raison d'être of § 185. Scaevola explains in said citations that in

menced, it cannot be suspended except in certain cases specified by law; and in that the corresponding plenary action is available to the debtor to raise the latter's claims.

[2] Pursuant to paragraph 3 of § 295 said orders, expressly mentioned to grant an appeal were: from an order granting or refusing a new trial; from an order granting or dissolving an injunction; from an order refusing to grant or dissolve an injunction; from an order dissolving or refusing to dissolve an attachment; from an order granting or refusing to grant a change of the place of trial; from any special order made after final judgment; and from an interlocutory judgment in actions for partition of real property.

granting the right to bring an ordinary action (he refers to § 185) the Code divests the decree of incapacity of the authority of res judicata. It does not give the decree, he says, a temporary character. Said decree creates a status which exists while it is acquiesced in, that is, until the ordinary action is brought. The review by cassation did not lie in said case because the decree of court being susceptible of modification by the judgment that may be rendered in the ordinary action, the first of the orders mentioned above has not the *final character* required by the Law of Civil Procedure. Therefore, in *Solá* v. *Solá* we held that the decree of incapacity is unappealable and we dismissed the appeal.

*Ex parte Antoni*, 42 P.R.R. 756, decided in 1931, dealt with the appeal from an order appointing a guardian. Relying on *Solá* v. *Solá*, the dismissal of the appeal was requested and we denied the motion to dismiss. The case was distinguished on the basis that *Solá* dealt with the declaration of incapacity and § 185 of the Civil Code was given great consideration. *Ex parte Antoni* dealt only with an order for the appointment of a guardian. We held that the orders for the appointment of guardian are appealable under subdivision 1 of § 295 of the Code of Civil Procedure. In fact, the decision in *Ex parte Antoni*, overruled the case of Solá because the distinction in the proceedings mentioned in *Antoni* does not exist.

Actually, some time later, in 1932, in *Hernández* v. *Hernández*, 43 P.R.R. 694 (1932), the Court reestablished, with full force and effect, the decision in *Solá*. In this case we said unequivocally that, in the absence of a statute granting the right to appeal, no appeal could be taken from an order appointing a guardian to a person previously declared incapacitated. The ground was that the appointment of a guardian is a consequence of the incapacity, and the incapacity must be decreed as a preliminary step to the appointment of a person who shall legally represent the incapacitated person; and that the real purpose sought with the declaration of

incapacity is the appointment of a guardian. As in *Solá*, in *Hernández* we dismissed the appeal.

The aforementioned cases were decided in 1922, 1931, and 1932. At that time the review by way of certiorari had a very limited scope. Nowadays the certiorari has a more ample scope as a mechanism for review since our decisions in *Pérez* v. *District Court*, 69 P.R.R. 4 (1948); *Blanes* v. *District Court*, 69 P.R.R. 106 (1948); *Camacho* v. *District Court*, 69 P.R.R. 689 (1949); and later *Borinquen Furniture* v. *District Court; Umpierre, Int.*, 78 P.R.R. 858 (1956); *People* v. *Superior Court*, 81 P.R.R. 740 (1960).

█ Aside from the foregoing, § 14 of the Organic Act of the Judiciary in force—Act No. 11 of July 24, 1952—in its subdivision (e), as amended by Act No. 115 of June 26, 1958, provides that "Any *decision* of the Superior Court may be reviewed by the Supreme Court by way of certiorari to be issued at its discretion, and not otherwise." We must decide that we issued the writs of certiorari with authority to do so, and that we have power at law to entertain and pass on these appeals. Let us consider the merits.

Section 2 of Art. V of the Constitution of the Commonwealth of Puerto Rico provides that "The courts of Puerto Rico shall constitute a unified judicial system for purposes of *jurisdiction*, operation and administration." The Legislative Assembly is empowered to create and abolish courts, except for the Supreme Court, in a manner not inconsistent with the preceding constitutional provision, and to determine their venue and organization.

The Organic Act of the Judiciary of Puerto Rico approved under the former constitutional Article—Act No. 11 of July 24, 1952—provides in its § 1 that the judicial power of the Commonwealth of Puerto Rico shall be vested in a single unified judicial system for the purposes of jurisdiction, operation and administration, consisting of a General Court of Justice. It provides that the Commonwealth of Puerto Rico

is constituted a single judicial district, over all of which the General Court of Justice shall exercise its power and authority.

The General Court of Justice consists of a Supreme Court of last resort and a Court of First Instance. The Court of First Instance, pursuant to the provisions of § 9 of the Act consists of two divisions: (a) the Superior Court and (b) the District Court. Section 10 provides that the Court of First Instance is a court of original general jurisdiction "with power to act in the name and by the authority of the Commonwealth of Puerto Rico in all civil and criminal proceedings."[3]

All the geographic territory of Puerto Rico having been constituted as a single judicial district it was indispensable that, for the orderly distribution and decision of all the judicial matters throughout the entire country, the lawmaker establish certain rules. It was provided that for said orderly distribution of the judicial matters the Superior Court would have parts and would hold sessions in certain cities of Puerto Rico, the same cities where, under the former law, there was a District Court (now Superior)—§ 11. For said orderly distribution of judicial matters the lawmaker also provided that every civil or criminal action would be filed in the part of the court held at the place where it should have been filed under the former legislation in force when the present Judiciary Act was approved—§ 10.

In determining the scope of power of the Superior Court the law provided, in its § 13, that as to civil matters said Court would have cognizance: ". . . (4) Of all recourses, actions and proceedings, including the probation of wills, divorce and extraordinary and special legal remedies, in regard to which the District Court of Puerto Rico heretofore

---

[3] Cf. Suliveres v. Arjona, 76 P.R.R. 859 (1954); People v. Superior Court; Detrés, Int., 80 P.R.R. 488, 493 (1958); Rodríguez v. Registrar, 75 P.R.R. 669 (1953); People v. Superior Court, 84 P.R.R. 135 (1961).

exercised cognizance up to the date on which this Act takes effect."

Section 180 of the Civil Code, 1930 ed., provides that "A tutor shall not be appointed for insane, demented and deaf and dumb persons, when of age, without a previous decree of the *district court of their domicil* that they are incapable of administering their property." (Italics ours.) Therefore, we see that, under the former legislation it was incumbent upon the former District Court to take cognizance of the proceedings for the appointment of tutor of a person of age. Pursuant to subdivision 4 of § 13 of the Judiciary Act, said cognizance corresponds now to the Superior Court.

Since § 180 provides that the declaration of incapacity shall be decreed by the District Court (Superior Court) of the *domicile* of the incapacitated person, under the legislative rule contained in § 10 to the effect that every civil or criminal action shall be filed in the part of the court held at the place where it should have been filed under the former legislation, the decreeing of the declaration generally corresponds to the part of the Superior Court which covers the domicile of the incapacitated person.

We must reaffirm, as a proper rule of operation and venue, that although the authority to decree declarations of incapacity and appointments of tutors corresponds to the Superior Court, which covers the entire geographic territory of Puerto Rico, pursuant to the legislative order the attorneys and the parties should normally resort to the part of the Superior Court of the *domicile* of the alleged incapacitated person. The same rule must govern in other matters of voluntary jurisdiction or adversary proceedings where, under the law in force when the Judiciary Act became effective a particular venue was fixed either on the basis of the location of the property in question, or the domicile of a person or under any other view of positive law.

116

Let us now consider the problem of whether, as petitioners maintain, the declaration of incapacity and the appointment of tutor decreed by the Superior Court, Caguas Part, are null and void on the ground, first, that said Part does not cover the domicile of the person declared incapacitated, and second, that another Part was already taking cognizance of the matter.

Returning to § 10 of the Judiciary Act, the same unmistakably provides that "no cause shall fail on the ground that it has been submitted to a division without jurisdiction or authority or to a part of the court of improper venue."

This provision constitutes the very essence of the organic reform of the Judicial Power of 1952, which, in fact, had already commenced with the Judiciary Act of 1950. It was, precisely, the defeat of the actions and of the rights of the litigants under the former system of the division of Puerto Rico into different judicial districts having a disunified jurisdiction, what inspired the necessity of the reform.

In the report of the Committee which drafted the Bill of the Judiciary Act in force, the following is stated in relation to the former provision of law:

"In its title as well as in its context this section makes reference to jurisdiction and venue, concepts which have been generally excluded from the law for fear of restrictive ambiguities and connotations which may possibly be derived from said concepts. However, herein, they should preferably be used; the first, to show that the full power of the Commonwealth as sovereign to adjudicate cases is conferred to the courts herein created and, the second, to show that the proper place to hold the trial is *the same* as provided by the former laws, generally, the place where the facts occurred, or where the property in controversy is located, or the place where the parties reside. Having made the important pronouncements, the section then contains the *equally fundamental* and original provision to the effect that *'no cause shall fail on the ground that it has been submitted to a division without jurisdiction or authority or to a part of the court of improper venue.'*" (Italics ours.)

The foregoing legislative provision to the effect that no cause shall fail for the reasons stated is not in any manner whatsoever limited in its effects by the other statutory provisions on the agreement of the parties or the consent of the judge. As we have said before, these last provisions are the result of the orderly distribution of the matters in litigation throughout the entire island as a single judicial district. Hence, in last instance the final responsibility of continuing with the trial, or ordering the change of venue is imposed on the judge.

■ As to the first ground for challenge we must conclude that the declaration of incapacity and appointment of tutor decreed in this case by the Superior Court, Caguas Part, is not null and void by reason that the territorial extension of said Part does not comprise, pursuant to the former legislation, Ayuso's domicile.[4] The nullity of said declaration cannot be decreed either on the second ground, both Parts, that of San Juan and that of Caguas, being the same Superior Court.

In appeal O-68-306, where petitioners challenge the decision of the San Juan Part, refusing to continue with the case by reason that the declaration of incapacity and the appointment of tutor, which was the question pending, had already been decreed by the Caguas Part, the writ of certiorari issued will be quashed. The decision of Mr. Plinio Pérez Marrero was carefully considered and entirely correct. It would have been slightly edifying, incompatible with the best juridical tradition, to establish, as in the biblical instance, a struggle between courts arguing over the matter. An action of the San Juan Part insisting in the appointment of another tutor would have led to an undesirable situation, in both tutors trying to exercise their duties, each one invoking the judicial authority conferred to them by said Parts.

---

[4] The petition for the declaration of incapacity filed in the San Juan Part does not allege Ayuso's domicile.

■ The generally acceptable rule that when a court assumes jurisdiction first in relation to a matter it should retain it, rule which originates from the existence of different courts and which is not entirely applicable to the governing judicial organization of a single unified court for the purpose of jurisdiction, should not prevail in a situation like the present one, over the rule of greater propriety, consideration and good judgment of the magistrate in the discharge of the judicial function.

It having been concluded that the declaration of incapacity and the appointment of tutor decreed by the Caguas Part are not null and void, said declaration and appointment of tutor are left in force and the writ issued in appeal O-68-307 will be quashed.

Since their father is dead, the minor-petitioners are already the forced heirs of their grandfather, Antonio Ayuso. Section 186 of the Civil Code grants the lawful tutorship in these cases, first, to the spouse. The concurrence of forced heirs and the spouse does not produce, *ipso jure*, a state of conflict.

The Caguas Part granted said minors intervention to allege what they believed was their lawful right. The record sent to us does not show that they had intervened. However, in view of the manner in which the facts have occurred in these appeals, our decision will not have the effect of precluding the minors, when the case returns to the Superior Court, from exercising the right to intervene granted to them, now limited—since there is no controversy between the interested parties as to the declaration of incapacity—to what relates to the appointment of tutor, and from substantiating their alleged right to the appointment of Juanita Ayuso Valdivieso as tutrix.

■ When a cause or appeal is filed in a Part of the Court of First Instance which is not the one assigned by law

to take cognizance of the matter, as a general rule, the presiding judge should order a change of venue to the corresponding Part, unless there are extraordinary circumstances requiring the departure from this rule, and which justify that the judge consent to continue with the cause. Otherwise, we would have the unification of the courts for the purpose of jurisdiction, but we would not have the most orderly organization for the purpose of operation. This could result in a less efficient administration of justice.

Considering the legislative rule of venue which should be honored; considering the fact that the Ayuso Mieres have their domicile in San Juan and their principal properties are located herein, and that at law, the most appropriate and convenient forum for any other transaction related to said properties and tutorship would be said Part, it is hereby ordered that in remanding the record of appeal O-63-307 the case be removed to the Superior Court, San Juan Part, to substantiate the intervention granted to the minors and for any further transactions. This decision does not affect the exercise of the tutorship by Mrs. Mieres, unless she is otherwise relieved therefrom.

Judgment will be rendered in conformance with this opinion.

Mr. Chief Justice Negrón Fernández and Mr. Justice Blanco Lugo did not participate herein.

